JOHN HAYNES *versus* JOHN L. HUNNEWELL.

A principal, whose agent, duly authorized, has completed a purchase of stock for him, cannot repudiate the transaction by reason of any neglect of his agent to inform him of the fact.

The treasurer of a corporation, who purchases stock in its behalf, and by direction of its authorized officers, does not render himself personally liable to pay therefor; but otherwise, if he really acts for himself, or without authority from the corporation, though purporting to act as its agent and in its behalf.

On REPORT from *Nisi Prius*, SHEPLEY, C. J., presiding.

ASSUMPSIT to recover for fourteen shares of stock in the North Wayne Scythe Company.

In a suit against that company, it was thought necessary that plaintiff should be a witness. To be so, his stock, consisting of fourteen shares, must be sold. They were transferred to defendant, by L. M. Morrill, who was counsel for the company; and the plaintiff testified. He also stated that his shares were sold to defendant.

The only authority which Morrill had is contained in the following letters:—

"Boston, Oct. 28th, 1852.

"L. M. Morrill, Esq., Augusta, Me.

"I will buy stock of Haynes at seventy dollars per share, company's note, six months' credit. He can buy it back, if within four months.        "John L. Hunnewell."

"Augusta, Nov. 5th, 1852.

"Dear Sir:—Haynes thinks he ought to have *more than* 70 *per cent.* for his stock. Thinks he will be content to get 80 cents. Will you authorize me to say that amount for the company and take a transfer?

"I think Haynes' testimony quite important—nearly indispensable, and should be glad to avail ourselves of it.

"Please instruct me by return of mail, or by telegraph on Monday next, as the case is set down for trial for that day.

"Yours,        "L. M. Morrill.

"John L. Hunnewell, Esq."

Telegraphic despatch.

"Boston, Nov. 8, 1852.

"L. M. Morrill, Esq.

"Since I wrote last, I have tried to sell stock, and have so far succeeded, as to have an offer of 75, and think I shall get 80, but without doubt 77½. Say to Haynes to transfer the stock to me personally, and I will send him the notes of the company, or what I may receive, and it shall be good. Let him know that if he transfers to me at 70, he can buy back at any time within three months, by giving notice in thirty days from transfer. If above that, it must be an actual sale.

"J. L. Hunnewell, Treas'r."

"Augusta, Dec. 10, 1852.

"Dear Sir:—Agreeably to your despatch, I arranged with Mr. Haynes for his shares at 80 cents, to be paid as you proposed, and he has left the certificates with me to close the matter with you.

"There are 14 shares, and he would like to have two notes; one for $1000, and the other for balance, $120, on the time proposed. "Yours, "L. M. Morrill."

"Boston, Dec. 17th, 1852.

"L. M. Morrill, Esq., Augusta.

"Will you ascertain and let me know if this is a sale of the stock, and not to be re-transferred again at same price, as it will make some difference in my plans, and in my letter we were to know this when transferred.

"The company are disposed to do all they can in this suit, but the property was conveyed by Mr. D. by a warrantee deed against the claims of all persons.

"You know as well as we how far such things go, but we give it attention in order that it shall be prompt, but not that in a pecuniary way we are in the least interested.

"Yours, "John L. Hunnewell, Treas'r."

"Augusta, Dec. 19th, 1852.

"Dear Sir:—I understand the transfer of the stock to you, to be a sale absolute, and not to be re-transferred except at your option. Haynes testified he had sold his stock, and I am not instructed to take from you the right to re-purchase.

"I should, therefore, feel authorized to deliver the stock to you unconditionally, upon receipt of notes.

"I perfectly understand your position in making the defence in this suit, and that you do not intend to waive any rights you may have for indemnity over against your grantor.

"Your ob't serv't,                    "L. M. Morrill.
"J. L. Hunnewell, Boston."

"Boston, Dec. 20th, 1852.
"L. M. Morrill, Esq.

"Mr. Haynes' stock may be transferred to J. L. Hunnewell, Treasurer, as I spoke to one or two parties about it, and I will send him company notes, or I may send the person's notes who takes it, which I will decide upon when I transfer.

"I will be responsible that he shall receive either the company's or the purchaser's note.

"Yours truly,                    "J. L. Hunnewell, Treas'r."

The defendant offered in evidence the two certificates of stock, with the plaintiff's transfer thereon, dated Oct. 28, 1852.

He also offered a letter of plaintiff of which this is the copy.

"Kent's Hill, May 22d, 1853.

"Mr. J. L. Hunnewell,—Dear Sir:—I received a very strange letter from you through Mr. J. F. Taylor of North Wayne, this morning.

"I should not perhaps have replied to it had it not contained some certificates of stock which belong to you. As it is, I will merely say, I sold to you last fall, as treasurer of the company, fourteen shares of the stock of the North Wayne Scythe Company.

"Lot M. Morrill, Esq., of Augusta, attorney for said company, showing authority to purchase the same, under the sig-

nature of yourself as treasurer, and promising to pay me therefor in not over six months at eighty dollars per share.

"I accordingly made the transfer of the shares, and, as you requested, to you personally. But I am sorry to add, I have not yet received my pay for them, though the time longest set has some time since expired, and present appearances indicate that I shall be under the necessity of enforcing payment.

"Yours, &c., "John Haynes."

On this evidence the Court were authorized to render a legal judgment.

*J. H. Williams*, for defendant.

*Bradbury*, for plaintiff.

TENNEY, J.—In the fall of 1852, a suit in favor of one Underwood against the North Wayne Scythe Company was pending, for the recovery of damages alleged to have been sustained by the flowing of the complainant's land. The parties to this action were interested as stockholders in that company, and it was supposed by both, that the knowledge possessed by the plaintiff would be very material to the defence of the flowage suit, if he could be made a competent witness. A correspondence took place between them in relation to a sale of the plaintiff's stock to the defendant, who offered the sum of $70 a share, company's note, six months' credit, with the privilege of repurchasing in four months, in a letter of October 28, 1852. L. M. Morrill was counsel for the company in the action of Underwood against it; and he wrote the defendant on Nov. 5, that Haynes thought he ought to have more than 70 per cent. for his stock. "Thinks he will be content to get 80 cents." "Will you authorize me to say that amount for the company, and take a transfer?" He writes further, "I think Haynes' testimony quite important, nearly indispensable, and should be glad to avail ourselves of it." He requested that he be instructed by return of mail, or by telegraph, as the case was set down for trial on Monday, then next.

On Nov. 8, the day assigned for the trial of the complaint,

the defendant sent to Morrill by telegraph, saying he thought he should obtain " 80" for the plaintiff's stock, and adds, " Say to Haynes to transfer the stock to me personally, and I will send him the notes of the company, or what I receive, and *it shall be good.*   Let him know, that if he transfers to me at 70, he can buy back at any time within three months, by giving notice in thirty days from transfer.   If above that, it must be an absolute sale."

After the instructions of the defendant to Morrill, of Nov. 8, and before the trial of the suit against the company, Morrill stated to the plaintiff, that the price which the defendant was to give, was $80 a share, and transfers were written on the certificates, in the hand of the plaintiff, were executed by the plaintiff, and delivered to him immediately.   Haynes testified in the trial, and, in answer to a question put to him on the stand, touching his interest, stated that he had sold his shares to the defendant.

On Dec. 10, 1852, Morrill informed the defendant, by letter, of the transfer of the shares to him, that he had possession of the certificates, and that he was ready to receive the notes which were to be given in payment.   In a letter of Dec. 17, 1852, the defendant inquired of Morrill, whether the sale was absolute, and not to be re-transferred, which was answered on Dec. 19, that the sale was absolute.   On Dec. 20, 1852, the defendant wrote to Morrill, saying, that the stock of Haynes might be transferred to J. L. Hunnewell, " Treasurer," as he had spoken to one or two parties about it, and would send him the company notes, or might send the note of the person who should take it, which he would decide upon, when he, [the writer,] should transfer; and said, " I will be responsible, that he shall receive either the company's or the purchaser's note."   All the letters written to Morrill, referred to, after that of Oct. 28, 1852, were signed "J. L. Hunnewell, Treasurer."

The authority given to Morrill, to say to the plaintiff, to transfer the shares to him, was in answer to the question, whether he would authorize him to say that the price should

be $80 a share, and take a transfer. To secure one great object of the negotiation in the proposed transfer, it was necessary that the contract should be closed immediately. The transfer was made, so that the plaintiff treated it as effectual, to divest his interest; he did not insist upon the payment, before the transfer was perfect by the delivery of the certificates. Morrill was the agent of the defendant, and received the certificates as such; and thereupon the contract was concluded.

It is objected, that so long a time elapsed after the authority was given by the defendant to purchase the shares, and notice to him of the transfer, that he was excused from a compliance with his offer. The contract being complete between the plaintiff and the defendant, through his agent, immediately after the offer was made, the plaintiff could not have been affected by the delay, for which he was in nowise responsible. But the delay was not injurious to the defendant. The power which he gave to Morrill, to take the transfer at $80 a share, was executed. No advantage was attempted by the plaintiff, because the notes in payment were not met, but he was ready long afterwards to receive the payment in the mode contemplated.

The letters, addressed to Morrill, after the defendant was informed of the transfer, treated the bargain by the defendant, as consummated on the part of the plaintiff, and no objection was made on account of not having been seasonably informed thereof; but the inquiries therein, were based upon the assumption, that nothing had been wanting on the part of the plaintiff and Mr. Morrill.

The defence is also relied upon, that the defendant in the transaction, acted in behalf of the North Wayne Scythe Company, and therefore cannot be personally responsible. If he was merely acting for the company, carrying out the offers which it, through its authorized officers, had directed him to make and accept, the objection is well taken. But if it appears, from the whole evidence, that he was acting in his own behalf, and not by the authority of the company, he will be

personally liable, notwithstanding he signed his name as treasurer, and might have expected that the company would adopt and ratify his doings.

The transfer was made to him, and not to the company, by his express direction. As late as Dec. 20, 1852, it appears, that it was an open question, whether the company or some other party would take the stock; but the language is express, that a transfer from him was contemplated, before he could determine what notes would be sent in payment. And, when he says in the letter of that date, "I will be responsible that the plaintiff shall receive, either the company's or the purchaser's note," and in the letter of November 8, that the notes of the company, or what he may receive, "shall be good," it must be understood, that he acted for himself alone. And it does not appear, that the directors of the company had any action upon the question of the purchase of the shares; nor that the defendant had any agency whatever from the company, or the officers, who had power to confer it.

*Defendant defaulted.*

RICE and APPLETON, J. J., concurred.